```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA J. MARCUS,                )
                                )
          Plaintiff,            )
                                )
     v.                         )    Civil Action No. 03-1790
                                )
METROPOLITAN LIFE               )
INSURANCE COMPANY,              )
                                )
          Defendant.            )
```

## REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is respectfully submitted that Plaintiff's Petition and Supplemental Petition for Attorney Fees and Costs (docs. 47 & 64) be granted in part and denied in part and that the district court award plaintiff $64,950.00 in counsel fees and $1,328.77 in costs.

II. REPORT

Plaintiff, Linda J. Marcus ("Marcus"), commenced the underlying action pursuant to the Employment Retirement Income Security Act ("ERISA"), Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), claiming that she was improperly denied benefits under the long term disability policy issued to her employer, Henderson Brothers, Inc., by defendant Metropolitan Life Insurance Company ("MetLife"). On January 27, 2006, the district court, after *de novo* review of the record, adopted the Report and Recommendation issued by the undersigned and granted summary

judgment in favor of Marcus at Count I[1] and in favor of MetLife at Count II.[2] By Order dated April 28, 2006, the district court entered Judgment in favor of Ms. Marcus on Count I and against MetLife in the amount of $20,098.93 for retroactive disability benefits and prejudgment interest from January 11, 2003 to April 10, 2006. Further the district court ordered that Ms. Marcus's long term disability benefits were reinstated subject to the terms and conditions of the Henderson Brothers Long-Term Disability Benefits Plan, with benefits payable as of April 11, 2006.

Presently before the court are plaintiff's motion and supplemental motion for an award of attorney fees and costs. The motions have been fully briefed and are ripe for decision.

*Discussion*

Attorney's fees may be awarded to a prevailing party in actions brought under ERISA. Section 502(g) of ERISA provides that "[i]n any action under this chapter ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Third Circuit has set forth five factors a district court must consider

---

[1] At Count I of the Amended Complaint, Marcus sought to recover benefits pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1332(a)(1)(B).

[2] At Count II of the Amended Complaint, Marcus brought a breach of fiduciary duty claim pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1332(a)(2).

2

when deciding whether to award attorney's fees and costs pursuant to section 502(g). These five factors are:

> (1) the offending part[y's] culpability or bad faith;
> (2) the ability of the offending part[y] to satisfy an award of attorneys' fees;
> (3) the deterrent effect of an award of attorneys' fees against the offending part[y];
> (4) the benefit conferred on members of the pension plan as a whole; and
> (5) the relative merits of the parties' position.

<u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 673 (3d Cir. 1983). A district court is required to set forth with specificity its reasoning and conclusion for each of the five factors. <u>McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.</u>, 33 F.3d 253, 254 (3d Cir. 1994) (<u>quoting</u> <u>Ursic</u>, <u>supra</u>).

### First *Ursic* Factor - Culpability or Bad Faith

Bad faith normally connotes an ulterior motive or sinister purpose, <u>McPherson</u>, <u>supra</u> at 256, which is not apparent here. "A losing party may be culpable, however, without having acted with an ulterior motive." <u>Id.</u> A party is not culpable merely because it took a position on which it did not prevail in the litigation. <u>Id.</u> at 257. Rather, culpable conduct has been defined as "conduct that is 'blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault ... Such conduct normally involves something more than simple negligence

3

... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose.'" Id. at 256-257 (citation omitted).

MetLife argues that its decision to deny Ms. Marcus disability benefits does not amount to culpable conduct because the company's action was "reasonably based on the record before it and in accordance with the terms and provisions of the employee welfare plan at issue." Defendant's Brief in Opposition to Plaintiff's Petition and Supplemental Petition for Attorneys' Fees and Costs ("Def. Br.")(doc. 67), pp. 3-4. This court -- and the district court -- rejected defendant's argument in this regard on the merits of the ERISA claim. Indeed, as discussed at greater length in both the Report and Recommendation and the January 27, 2006 Order, defendant's actions were clearly faulty and censurable at best and, therefore, meet the definition of culpability.

As the district court previously observed, MetLife's reviewing physicians reached their decision by

> [h]ighlighting various symptoms and
> conditions that were only peripheral to the
> central conditions causing plaintiff's
> disability and focusing on certain tests and
> treatments or the lack thereof as
> 'unconventional' or 'unusual' while ignoring
> or dismissing the vast array of affirmative
> test results from accepted diagnostic testing
> methods, as well as repeated findings and
> medical assessments by a specialized treating
> physician and a consulting internist.

4

Order, dated January 27, 2006 (doc. 45), pp. 1-2.  As well, the district court found that the reviewing physicians' "criticisms and proposed alternative forms of treatment ... fall far short of creating any true conflicts in the medical evidence as a whole." Id., p. 2.  In short, MetLife's review and determination did not "supply a basis to discredit the comprehensive body of previously generated medical evidence supporting the existence and disabling nature of plaintiff's chemical sensitivity, autoimmune disease and chronic fatigue syndrome impairments, which were further exacerbated by the presence of autoimmune thyroiditis and chronic Lyme disease."  Id.[3]  The court's determination went beyond mere disagreement with MetLife's evaluation, to a finding that the evaluation was not supported by the competent medical evidence of record.  As such, the first Ursic factor weighs in plaintiff's favor.

---

[3]  MetLife continues its *ad hominem* attack on plaintiff's treating physician, Roy E. Kerry, M.D., by asking the court to take judicial notice of a newspaper article that concerned "controversial" treatment this physician is alleged to have rendered to an autistic patient who subsequently died.  The court was unable to locate the referenced article.  However, we did locate another newspaper account -- not mentioned by the defendant -- which indicated it was not known whether the patient's death was linked to the treatment.  Nevertheless, MetLife invited the court to find that Dr. Kerry's alleged use of another "controversial" treatment somehow lends support to the company's criticisms of the physician's treatment of the plaintiff.  We decline to join or otherwise credit MetLife's personal attack on Dr. Kerry.

5

Second *Ursic* Factor - *Ability to Pay*

There is no contention by MetLife that it does not have the ability to satisfy an award of attorney's fees and costs. Indeed, MetLife concedes this point. Accordingly, the second Ursic factor weighs in plaintiff's favor.

Third *Ursic* Factor - Deterrent Effect

MetLife argues that an award of fees and costs would not deter similar benefits decisions since MetLife "evaluated plaintiff's disability claim thoughtfully and carefully." Def. Br., p. 5. As discussed, the court previously determined that MetLife gave inconsistent treatment to the same facts, first granting Marcus disability benefits then terminating them, when her symptoms were the same if not worsening at the time MetLife terminated her benefits as for the period MetLife granted her benefits. As such, it appears that MetLife's evaluation was less than thoughtful and careful.

In our view, a fee award under the circumstances of this case will have a deterrent effect. See McPherson, 33 F.3d at 258, citing Kann v. Keystone Resources, Inc. Profit Sharing Plan, 575 F. Supp. 1084, 1096-97 (W.D.Pa. 1983)(Finding that where culpability has been shown, a fee award will make the Plan "less likely and not so quick to deny benefits to other participants" and thus be "a deterrent factor."). Therefore, the third Ursic factor weighs in plaintiff's favor.

6

### Fourth *Ursic* Factor - Benefit to Members of the Plan

The plaintiff brought this action seeking a remedy in her individual capacity and not on behalf of the Plan. Nevertheless, other members of the Plan arguably will benefit if the award of attorney fees and costs serves as an incentive to administer benefits properly. Accordingly, the fourth Ursic factor weighs in Marcus's favor.

### Fifth *Ursic* Factor - Relative Merits of the Parties' Positions

The plaintiff succeeded on her claim that MetLife wrongfully terminated her disability benefits because, as discussed, MetLife's basis for termination ignored or dismissed competent medical evidence and generally lacked support. The plaintiff did not succeed, however, on her claim for breach of fiduciary duty since, by law, section 502(a)(2) allows for recovery on behalf of a Plan and not for individual relief. Accordingly, we weigh the fifth factor in favor of neither party.

No single Ursic factor is to be decisive; rather, the factors are to be "considered in balance and relationship to the others." Vintilla v. U.S. Steel Corp. Plan for Employee Pension Benefits, 642 F.Supp. 295, 296 (W.D.Pa. 1986), aff'd, 815 F.2d 693 (3rd Cir. 1987)(Table), cert. denied sub nom Belak v. U.S. Steel Corp. Plan For Employee Pension Benefits, 484 U.S. 847 (1987)(cit. omitted). Upon consideration of the Ursic factors,

this court finds they favor an award of attorney fees and costs to the prevailing plaintiff in this action.

In the Third Circuit, the "lodestar" approach is used to calculate reasonable attorney fees granted pursuant to ERISA. Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000)("The method for establishing the statutory fee is now settled by Supreme Court cases.  The court must start by taking the amount of time reasonably expended by counsel ... and compensate that time at a reasonable hourly rate to arrive at the lodestar. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).  "This formulation suggests a twin inquiry into reasonableness: a reasonable hourly rate *and* a determination of whether it was reasonable to expend the number of hours in a particular case."  Ursic, 719 F.2d at 676. Plaintiff is entitled to an award of attorney fees for work that is "useful and of a type ordinarily necessary" in pursuing the litigation.  Pennsylvania v. Delaware Valley Citizens' Council ("Delaware Valley"), 478 U.S. 546, 560-61 (1986).  Hours and costs that are "excessive, redundant, or otherwise unnecessary" however, must be excluded.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

Here, MetLife does not challenge the stated hourly rate of $300.00 per hour.[4] However, MetLife does challenge the following hours as excessive, redundant or otherwise unnecessary:

<u>3 hours[5] to research estoppel issue</u>

Although it appears that plaintiff was not successful in arguing judicial estoppel since none of the circumstances under which judicial estoppel could apply existed in this case, see <u>Montrose Medical Group Participating Savings Plan v. Bulger</u>, 243 F.3d 773, 777-78 (3d Cir. 2001), it appears that this research led to the discovery of other matters asserted in support of plaintiff's argument that defendant's determination was arbitrary and capricious. MetLife has offered no evidence to suggest that this research was not "useful and of a type ordinarily necessary." <u>Delaware Valley</u>, 478 U.S. at 560-61. Accordingly, we find no reason to exclude these hours.

---

[4]  As well, plaintiff has met her burden of producing sufficient evidence of what constitutes a reasonable market rate for attorneys with plaintiff's counsel's skill, experience and reputation, <u>i.e.</u>, the Affidavit of James W. Carroll, Jr., Esquire (doc. 47-3). <u>See</u> <u>Smith v. Philadelphia Housing Authority</u>, 107 F.3d 223, 225 (3d Cir. 1997).

[5]  Plaintiff's Petition for Attorney Fees and Costs, Affidavit of Tybe A. Brett, Esq., Time & Expense Records (doc. 47-2), 5/19/04 entry.

<u>6.8 hours[6] to prepare request for admissions</u>

Inasmuch as review of an ERISA claim under the arbitrary and capricious standard is limited to review of the record that was before the Plan administrator when he made the decision being reviewed, <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 440 (3d Cir. 1997), and it appearing that this request for admissions was prepared after the close of the administrative record and sought admissions relating to the contents of the administrative record and the process employed and not evidence related to any potential bias or conflict of interest, these hours appear to fall outside those that would be necessary or useful.  Thus, the court should deduct 6.8 hours ($2040.00) from the fee claimed.

<u>1.4 hours[7] to prepare an affidavit and 9.6 hours[8] regarding expert's report included in summary judgment motion</u>

As discussed, review of an ERISA case such as this is limited to the administrative record.  Nevertheless, the court may take further evidence to aid in its understanding of the medical issues involved.  <u>Kosiba v. Merck & Co.</u>, 384 F.3d 58, 69 (3d Cir. 2004).  In this regard, the plaintiff submitted extra-record exhibits which the court ultimately rejected and struck.  Defendant has cited no authority for excluding the time spent here and we are not prepared to say that plaintiff's effort in

---

[6]   <u>Id.</u>, 5/26/04 & 5/28/04 entries.

[7]   <u>Id.</u>, 2/15/05 & 2/16/05 entries.

[8]   <u>Id.</u>, 6/1/05, 6/2/05, 6/0/05, 6/15/05, 6/22/05, & 6/23/05 entries.

this regard was not "useful and of a type ordinarily necessary" under the circumstances of this case, which involved complex medical issues, simply because the court chose not to reach outside the administrative record. Accordingly, we find no reason to exclude this time from the fee petition.

> 14.8 hours[9] to respond to the motion to strike exhibits

MetLife moved to strike the aforementioned extra-record exhibits included in support of plaintiff's cross-motion for summary judgment. The court granted defendant's motion. However, MetLife has cited no authority for excluding the time spent here and we are not prepared to say that plaintiff's effort in this regard was not "useful and of a type ordinarily necessary" under the circumstances of this case, which involved complex medical issues, simply because the court granted defendant's motion. Accordingly, we find no reason to exclude this time from the fee petition.

MetLife takes issue with the expenditure of many other hours by counsel for the plaintiff, which this court does not find to have been excessive, redundant or otherwise unnecessary. For example, MetLife complains at length about the fact that plaintiff's counsel refused to join in any request to remove the case from court-annexed, voluntary arbitration. Certainly, plaintiff's counsel had this right and in our view, her position

---

[9]   Id., 4/11/05, 4/12/05, 4/13/05, & 5/20/05 entries.

to proceed with the arbitration process did not constitute a display of unreasonableness requiring reduction of her fees. Moreover, the case was referred to arbitration on February 17, 2004 (doc. 6) and pursuant to Local Rule 16.2.4.B & C, MetLife could have moved to withdraw the matter from arbitration but did not do so until some nine months later, after arbitration failed through no fault of the parties or their counsel.

MetLife also complains generally that because this was a straightforward and uncomplicated case, counsel's expenditure of in excess of 77 hours on the summary judgment phase of the case, after having spent 17.8 hours preparing a pretrial narrative statement and a trial brief, which contained the facts and the law, was clearly excessive and redundant given counsel's level of skill and abilities.  We note that there were extensive medical records and facts in this case, together with aggressive litigation efforts by both sides to the litigation.  Under the circumstances, we do not find these challenged hours to be excessive.

MetLife's arguments as to the hours spent calculating damages and preparing exhibits therefor and as to the time spent dealing with matters at the circuit level as a result of MetLife's premature appeal are equally unavailing and unsupported.

Nor will this court recommend, as MetLife urges, that plaintiff's counsel's fees be diminished by one half since plaintiff prevailed on one out of two claims. Normally, the district court "should reduce the number of hours claimed by the number of hours spent litigating claims on which the party did not succeed." Loughner v. Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001). However, where an unsuccessful claim appears to have been "so closely related by common facts and related legal theories to the successful claim[] that the fees, expenses, and costs associated with them will not be segregated," Hensley, 461 U.S. at 465, reduction is not required. In this case, it appears that the facts, law and analysis on both claims were not so different or segregable so as to require a reduction in fees by one half.

Similarly, the district court should reject MetLife's argument that the fee should be reduced because the size of the recovery was small. The courts have rejected this argument. See, e.g., Brown v. Continental Construction Company, 2005 WL 1949610, * 3 (E.D.Pa. 2005), citing Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1043 (3d Cir. 1996).

MetLife also seeks to have the district court reduce the costs claimed by $365.75, which represents the amount expended on Dr. Kerry's supplemental report crafted after the administrative record was closed and which this court struck from the record. For the reasons stated above, because we cannot say that

13

plaintiff's effort in this regard, although unsuccessful, was unnecessary, we find no reason to deduct this cost.

For the above-stated reasons, the district court should reduce the requested fee award by 6.8 hours ($2040.00) and award plaintiff $64,950.00 in attorney fees and $1,328.77 in costs.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                        Respectfully submitted,

                        /s/ Amy Reynolds Hay
                        AMY REYNOLDS HAY
                        United States Magistrate Judge

Dated:   6 June, 2006

cc:  Hon. David S. Cercone
     United States District Judge

     Tybe A. Brett, Esquire
     Picadio, McCall, Miller & Norton
     600 Grant Street
     4710 USX Tower
     Pittsburgh, PA 15219

     Veronica W. Saltz, Esquire
     Saltz Polisher P.C.
     993 Old Eagle School Road
     Suite 412
     Wayne, PA 19087

```
Templeton Smith, Jr.
Thompson, Rhodes & Cowie, P.C.
1010 Two Chatham Center
Pittsburgh, PA 15219
```